## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARTHA KATHLEEN SCHMIDT and RICHARD SCHMIDT, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No. _____ |
| WYETH LLC, WYETH PHARMACEUTICALS INC., and WYETH-AYERST INTERNATIONAL INC. | ) ) MDL No. 1203 ) ) |
| Defendants. | ) ) ) ) |

### DEFENDANT WYETH LLC'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Wyeth LLC[1] ("Wyeth"), hereby gives notice of removal of this action, entitled *Martha Kathleen Schmidt and Richard Schmidt v. Wyeth LLC, et al.*, bearing Case ID 120801587, from the First Judicial District of Pennsylvania, Court of Common Pleas of Philadelphia County, Civil Trial Division (the "Philadelphia County Action"), to the United States District Court for the Eastern District of Pennsylvania.  Pursuant to 28 U.S.C. § 1446(a), a true and legible copy of Plaintiffs' Praecipe To Issue Writ of Summons is attached hereto as "Exhibit A" and Plaintiffs' Master Long Form Complaint in *In Re*: "Fen-Phen" Litigation in Philadelphia County Court of Common Pleas, filed as of May 17, 1999 under Master Docket No., May Term 1999, No. 0001, is attached hereto as

---

[1] On June 30, 2001, Wyeth-Ayerst Laboratories Company merged into AHP Subsidiary Holding Corporation.  On March 11, 2002, American Home Products Corporation ("AHPC") changed its name to Wyeth.  On January 31, 2007, AHP Subsidiary Holding Corporation merged into Wyeth.  On November 9, 2009, Wyeth converted from a Delaware corporation to a Delaware limited liability company and is now known as Wyeth LLC.  Wyeth Pharmaceuticals Division of Wyeth (formally known as Wyeth-Ayerst Laboratories Division of American Home Products Corporation) is an unincorporated division of Wyeth LLC and, therefore, is not amenable to suit.

"Exhibit B."

As grounds for removal, Wyeth states as follows:

## I. INTRODUCTION

1.  This action is a pharmaceutical product liability case in which Plaintiffs Martha Kathleen Schmidt and Richard Schmidt ("Plaintiffs") allege that they sustained personal injuries as a result of ingesting prescription diet drugs Pondimin® (also known as fenfluramine), Redux™ (also known as dexfenfluramine), and/or phentermine. *See* Ex. A. Pondimin often was prescribed in conjunction with another medication, phentermine, in a combination commonly referred to as "phen/fen," prior to the voluntary withdrawal of Pondimin from the consumer market in September 1997. Plaintiffs Martha Kathleen Schmidt and Richard Schmidt assert that they were diagnosed with Primary Pulmonary Hypertension ("PPH") as an alleged result of using prescription diet drugs manufactured by Wyeth. *Id.*

2.  The Judicial Panel on Multidistrict Litigation ("JPML") has consolidated pretrial proceedings for personal injury claims involving diet drugs pursuant to 28 U.S.C. § 1407 in the United States District Court for the Eastern District of Pennsylvania. *See In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 990 F. Supp. 834 (J.P.M.L. 1997). Because Plaintiffs' alleged personal injuries resulting from the ingestion of diet drugs, this case should be assigned to Multidistrict Litigation 1203 in accordance with Rule 7.2(a) OF RULES OF PROCEDURE OF THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION.

## II. REMOVAL TO THIS JUDICIAL DISTRICT IS PROPER AND TIMELY

3.  Plaintiffs commenced the Philadelphia County Action on August 16, 2012, by filing a Praecipe To Issue Writ of Summons in the First Judicial District of Pennsylvania, Court of Common Pleas of Philadelphia County, Civil Trial Division in the PPH Phen-Fen Mass Tort

Docket ("PCCP Phen-Fen Litigation") against named defendants Wyeth LLC, Wyeth Pharmaceuticals Inc., and Wyeth-Ayerst International Inc.

4.      Pursuant to "Case Management Order No. 1 for Phen-Fen Personal Injury Cases" at ¶ 2.C.1., Plaintiffs must file a Short Form Complaint within thirty (30) days of instituting Phen-Fen litigation with a Writ of Summons.  *See* CMO No. 1 (attached hereto as "Exhibit C") at 4.  Plaintiffs are prohibited from alleging additional counts not pled in the Master Long Form Complaint.  *Id.*

5.      No Defendant has yet been served with Plaintiffs' Praecipe To Issue Writ of Summons, Summons or Complaint.  This Notice of Removal is therefore timely filed pursuant to 28 U.S.C. § 1446(b).

6.      No further pleadings have been filed, and no proceedings have yet occurred in the Philadelphia County Action.

7.      Removal to this District is proper because the First Judicial District of Pennsylvania, Court of Common Pleas of Philadelphia County, Civil Trial Division is within the District Court for the Eastern District of Pennsylvania.  28 U.S.C. §§ 1441(a), 1446(a).

8.      Defendants base their removal on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

### III.    STATUTORY BASIS FOR JURISDICTION

9.      Removal of this action is proper under 28 U.S.C. § 1441.  The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as it is a civil action between citizens of different states in which the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.  Plaintiffs filed this as a diet drug PPH case.  *See* Ex. A. Typically plaintiffs allege that PPH is a life-threatening and frequently fatal illness and claim

damages, including punitive damages, well in excess of hundreds of thousands of dollars.  Prior

verdicts in PPH cases far exceeded hundreds of thousands of dollars.

### A.    Complete Diversity Exists Between the Parties

10.    Plaintiffs Martha Kathleen Schmidt and Richard Schmidt are citizens of the State

of New Mexico.  *See* Ex. A.

11.    Under 28 U.S.C. § 1332(c)(1), "a corporation shall be deemed to be a citizen of

any State by which it has been incorporated and of the State where it has its principal place of

business. . . ."  For purposes of diversity jurisdiction, the citizenship of an LLC is that of its

members.  *Country Classics at Morgan Hill Homeowners' Ass'n, Inc. v. Country Classics at*

*Morgan Hill, LLC*, 780 F. Supp. 2d 367, 370 (E.D. Pa. 2011); *see also Zambelli Fireworks Mfg.*

*Co., Inc. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) (stating that every circuit court to have

considered the issue has held that the citizenship of a LLC is determined by the citizenship of its

members, and joining in that holding).

12.    Defendants are all alleged to be citizens of states other than New Mexico.  *See* Ex.

B ¶¶ 2-5, 7.

13.    Defendant Wyeth LLC is a limited liability company organized under Delaware

law.  The sole member of Wyeth LLC is Pfizer LLC.  Pfizer LLC's sole member is Pfizer Inc.

Pfizer Inc is a Delaware corporation with its principal place of business in the State of New

York.  Defendant Wyeth LLC is, therefore, a citizen of both the State of Delaware and the State

of New York.

14.    Defendant Wyeth Pharmaceuticals Inc. (formally known as Wyeth-Ayerst Pharmaceuticals, Inc.)[2] is a Delaware corporation with its principal place of business in the Commonwealth of Pennsylvania.  Wyeth Pharmaceuticals Inc. is, therefore, a citizen of both the State of Delaware and the Commonwealth of Pennsylvania.

15.    Defendant Wyeth-Ayerst International, Inc. is a New York corporation with its principal place of business in the Commonwealth of Pennsylvania.  Wyeth-Ayerst International, Inc. is, therefore, a citizen of both the State of Delaware and the Commonwealth of Pennsylvania.

16.    Because Plaintiffs and Defendants are citizens of different states, there is complete diversity of citizenship for jurisdiction purposes.

**B.    The Amount in Controversy Requirement is Met**

17.    Plaintiffs allege that they suffer from PPH as a result of their ingestion of diet drugs Pondimin®, Redux[TM], and/or phentermine, and seek all compensatory and punitive damages to which they are entitled under applicable law.  *See id.* ¶¶ 123-138; Ex. A.

18.    Given the nature and extent of Plaintiffs' alleged injuries and damages, Plaintiffs' Praecipe To Issue Writ of Summons places at issue more than $75,000, exclusive of interest and costs.  *See Angus v. Shiley, Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("[T]he amount in controversy is not measured by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated."); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.*, MDL No. 1203, 2000 WL 556602, at *3 (E.D. Pa. Apr. 25, 2000) (concluding that "it is more likely than not that the jurisdictional amount is exceeded"

---

[2]       On January 1, 1999, Wyeth Laboratories Inc. merged into Ayerst Laboratories, Inc.   The surviving company was Ayerst Laboratories, Inc., the name of which was changed to Wyeth-Ayerst Pharmaceuticals Inc.  On March 22, 2002, the name of Wyeth-Ayerst Pharmaceuticals Inc. changed to Wyeth Pharmaceuticals Inc.

given that Plaintiffs' allege serious injuries include primary pulmonary hypertension or valvular heart disease and "there is no doubt that if plaintiff is successful, a reasonable jury likely could find damages in excess of the jurisdictional amount").

19.     Plaintiffs' claim for damages will therefore exceeds the requisite amount in controversy for purposes of diversity jurisdiction under 28 U.S.C. § 1332(a).

## C.     Removal is Proper Because No Forum Defendant Has Been Served with Process

20.     Pursuant to 28 U.S.C. § 1441(b), this action is removable because no party in interest properly joined and served as a defendant is a citizen of the Commonwealth of Pennsylvania, the state in which this action was brought (a "forum defendant").  *See* 28 U.S.C. § 1441(b) (providing that non-federal question cases "shall be removable only if none of the parties in interest properly joined ***and served*** as defendants is a citizen of the State in which the action is brought") (emphasis added).

21.     No Defendant, including any forum defendant, has been served.  Removal is proper where there is complete diversity, but no forum defendant has been served.  Although there is a split in this Circuit regarding this position[3], numerous courts have held that a non-forum defendant may remove an action prior to proper service of a forum defendant.  Relying on the language of Section 1441(b), in *Copley* v. *Wyeth, Inc.*, the United States District Court for the Eastern District of Pennsylvania denied plaintiff's motion for remand where a properly joined and served non-forum defendant removed the action before the alleged forum defendant had been properly joined and served.  2009 WL 1089663, at * 3 (E.D. Pa. Apr. 22, 2009); *see also Vanderwerf v. GlaxoSmithKline, PLC*, No. 05-1315, 2005 WL 6151369, at *1 (E.D. Pa. May 5, 2005); *Hutchins* v. *Bayer Corp.*, No. 08-640, 2009 WL 192468, at *11 (D. Del. Jan. 23, 2009);

---

[3]     *See, e.g., In re Avandia Mktg., Sales Practices and Prods. Liab. Litig.*, 624 F.Supp.2d 396, 410 (E.D. Pa. 2009).

*Thomson v. Novartis Pharms. Corp.*, No. 06-6280 (JBS), 2007 WL 1521138, at *4 (D.N.J. May 22, 2007).

22.     Furthermore, removal is proper when it occurs before any defendant has been served.  On multiple occasions this year, this Court has affirmed that removal of a matter before any defendant has been served is proper under the Removal statute.  Specifically, this Court has denied plaintiffs' motions for remand where a non-forum defendant removed the action before any defendant had been properly joined and served.  *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig., Heineman v. Am. Home Prods. Corp.*, MDL No. 1203, No. 12-20002 (E.D. Pa. July 17, 2012) (Pretrial Order No. 8914); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig., Valido-Shade v. Wyeth, LLC*, MDL No. 1203, No. 12-20003, 2012 WL 2861113, at *3 (E.D. Pa. July 11, 2012) (Pretrial Order No. 8910); *Boyer v. Wyeth Pharms., Inc.*, No. 2:12-cv-00739-EL, 2012 WL 1449246, at *3 (E.D. Pa. Apr. 25, 2012) (J. Ludwig) ("The pre-service removal of this action by a non-forum defendant where the forum defendant had not been served prior to removal was proper under the unambiguous language of § 1441(b).").

23.     Congress recently enacted legislation reaffirming that an action may be removed on the basis of diversity jurisdiction when a forum defendant is not properly joined or served at the time of removal.  The "Federal Courts Jurisdiction and Venue Clarification Act of 2011" amended the removal and remand procedures in 28 U.S.C. § 1441, but retained the language in section 1441(b) that bars removal only if any "of the parties in interest ***properly joined and served*** as defendants is a citizen of the State in which such action is brought."  *See* Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. No. 112-63 § 103, 125 Stat. 758, 760 (2011) (emphasis added).

24.     In the present case, because Plaintiffs have not served any Defendant, any such Defendant's purported residence in Pennsylvania is not an impediment to removal under 28 U.S.C. § 1441(b).

## IV.    NOTICE IS BEING SENT TO PLAINTIFFS AND FILED IN STATE COURT

25.     Pursuant to 28 U.S.C. § 1446(d), Wyeth LLC shall give Plaintiffs written notice of the filing of this Notice of Removal.

26.     Pursuant to 28 U.S.C. § 1446(d), Wyeth LLC shall file the written notice of the filing of this Notice of Removal with the Prothonotary of the Court of Common Pleas of Philadelphia County, Pennsylvania, attaching as Exhibit A thereto a copy of this Notice of Removal and the documents attached to this Notice of Removal.

WHEREFORE, Wyeth LLC hereby gives notice that the above entitled state court action, formerly pending in the First Judicial District of Pennsylvania, Court of Common Pleas of Philadelphia County, Civil Trial Division, has been removed to the United States District Court for the Eastern District of Pennsylvania.

Respectfully submitted,

Raymond M. Williams, Esq.
DLA Piper LLP (US)
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA  19103-7300
Phone: (215) 656-3300
Fax: (215) 656-3301
Email: raymond.williams@dlapiper.com

Dated:  August 17, 2012                         *Attorneys for Defendant Wyeth LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 17, 2012, a true and correct copy of the foregoing has

been sent to counsel listed below via U.S. Mail.


Thomas R. Kline, Esq.
KLINE & SPECTER, PC
1525 Locust Street
Philadelphia, PA 19102

James D. Sill, Esq.
SILL LAW GROUP, PLLC
14005 N. Eastern Avenue
Edmond, OK 73013

*Attorneys for Plaintiffs*




_____
Raymond M. Williams, Esq.

# EXHIBIT A

KLINE & SPECTER,
A Professional Corporation
By: Thomas R. Kline, Esquire/28895
By: Lee B. Balefsky, Esquire/25321
By: Michelle L. Tiger, Esquire/43872
1525 Locust Street
Philadelphia, PA 19102
Telephone (215) 772-1000
Fax: 215-735-0960
Attorneys for Plaintiffs

*Filed and Attested by
PROTHONOTARY
16 AUG 2012 11:19 am
S. GARRETT*

| | |
|---|---|
| MARTHA KATHLEEN SCHMIDT and RICHARD SCHMIDT, W/H 355 BLACK HAT AVE. SW LOS LUNAS, NM 87031 | : COURT OF COMMON PLEAS : : PHILADELPHIA COUNTY : : |
| Plaintiffs, | : |
| vs. | : |
| | : **PPH CASE** |
| WYETH LLC Five Giralda Farms Madison, NJ 07940 WYETH PHARMACEUTICALS INC. 500 Arcola Road Collegeville, PA 19426, ET AL WYETH-AYERST INTERNATIONAL INC. c/o Corporation Service Company 2704 Commerce Drive Harrisburg, PA 17110 | : : : : : : JURY TRIAL DEMANDED : : : |
| Defendants. | : |

## PRAECIPE TO ISSUE WRIT OF SUMMONS

TO THE PROTHONOTARY:

Please issue a Writ of Summons in the above-captioned case.

KLINE & SPECTER, PC.

Dated: 8/16/12          By: _____
                            Thomas R. Kline, Esquire
                            Lee B. Balefsky, Esquire
                            Michelle L. Tiger, Esquire
                            Attorneys for Plaintiff
                            *Local Counsel*

-1-

**–And–**

Of Counsel:
James D. Sill, Oklahoma Bar No. 8239
Matthew J. Sill, Oklahoma Bar No. 21547
Katie Eidson-Griffin, Oklahoma Bar No. 30829
        SILL LAW GROUP, PLLC
14005 N. Eastern Ave.
Edmond, OK 73013
Telephone (405) 509-6300
Fax: (405) 509-6268
Attorneys for Plaintiffs

-2-

Case ID: 120801587

C.P.97

# Commonwealth of Pennsylvania

## CITY AND COUNTY OF PHILADELPHIA

SUMMONS
*CITACION*

MARTHA KATHLEEN SCHMIDT and
RICHARD SCHMIDT, Wife and Husband
355 Black Hat Ave, SW
Los Lunas, NM 87031

COURT OF COMMON PLEAS

Philadelphia County _____ Term, 20 04

No. _____

*vs.*

WYETH LLC
Five Giralda Farms
Madison, NJ 07940, ET AL

To(1)

WYETH LLC
Five Giralda Garms
Madison, NJ 07940

WYETH PHARMACEUTICALS INC.
500 Arcola Road
Collegeville, PA 19426

WYETH-AYERST INTERNATIONAL
INC
c/o Corporation Service Company
2704 Commerce Drive
Harrisburg, PA 17110

You are notified that the Plaintiff(2)
*Usted esta avisado que el demandante(2)*

MARTH KATHLEEN SCHMIDT and RICHARD SCHMIDT

Has (have) commenced an action against you.
*Ha (han) iniciado una accion en contra suya.*



JOSEPH H. EVERS
*Prothonotary*

By _____



120801587
16 AUG 2012 11:19 am
S. GARRETT

Date _____

(1) Name(s) of Defendant(s)
(2) Name(s) of Plaintiff(s)

10-208 (Rev. 6/00)

COURT OF COMMON PLEAS

Philadelphia Term, 20 _04_ No._____

MARTHA KATHLEEN SCHMIDT and
RICHARD SCHMIDT, Wife and Husband
355 Black Hat Ave, SW
Los Lunas, NM 87031

vs.

WYETH LLC
Five Giralda Farms
Madison, NJ 07940, ET AL.

SUMMONS

Case ID: 120801587

# EXHIBIT B

Court ... on Pleas of Philadelphia County
Trial Division
# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

9905 -0000 1

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| Philadelphia Master Complaint | American Home Products Corporation |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | Five Giralda Farms<br>Madison, NJ 07940 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | Wyeth-Ayerst International, Inc. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | c/o The Prentice-Hall Corp. System, Inc.<br>319 Market Street<br>Harrisburg, PA 17101 |

| TOTAL NUMBER OF PLAINTIFFS (70) | TOTAL NO. OF DEFENDANTS (71) | COMMENCEMENT OF ACTION | OTHER |
|---|---|---|---|
| | 30 | [X] 1. Complaint<br>2. Writ of Summons<br>3. Notice of Appeal<br>4. Petition Action | [ ]5. Arbitration  [ ]10. In Forma Pauperis<br>[ ]6. Jury  [ ]11. Transfer from Other Jurisdiction<br>[ ]7. Non Jury & Equity  [ ]12. Minors/Incompetent Compromise<br>[ ]8. Class Action  [ ]13. Survival Action<br>[ ]9. Savings Actions  [ ]14. Wrongful Death Action (involving minors) |

AMOUNT IN CONTROVERSY
[ ]30. $50,000.00 or less   [ ]32. Assessment of damage. hearing required
[ ]31. More than $50,000.00   [ ]33. Assessment of damages hearing not required

ACCRUAL OF CAUSE OF ACTION
[X]40. Action arose in Philadelphia County
[ ]41. Action did not arise in Philadelphia County
(state reason for filing action in Philadelphia County below in #60)
[ ]42. Transaction or occurrence giving rise to action arose in Philadelphia County
[ ]43. Transaction or occurrence giving rise to action did not arise in Philadelphia County
(describe transaction or occurrence below in #60)

DEFENDANT INFORMATION
[ ]50. All defendants are residence of (or have offices in) Philadelphia County
[ ]51. Main defendant is a resident of (or has offices in) Philadelphia County
[X]52. All defendants regularly conduct business in Philadelphia County (see Instruction F)
[ ]53. Main defendant regularly conducts business in Philadelphia County (see Instruction F)
[ ]54. Defendants are not residents of (and do not have offices in) Philadelphia County
(state below in #60 reason for filing action in Philadelphia County)

[ ]60.  Plaintiff ingested diet drugs that were regularly supplied in Philadelphia County by named Defendants.

CODE NUMBER AND TYPE OF ACTION (See Instruction G)
26030

STATUTORY BASIS FOR CAUSE OF ACTION (See Instruction H)

In Re: Phen-Fen-CMPLT

RELATED PENDING CASES (List by Docket Number - Indicate Whether the Related Cases Have Been Consolidated)

99050000100008

| NAME OF PLAINTIFF'S/APPELLANT'S ATTORNEY | ADDRESS (See Instruction J) |
|---|---|
| Lee B. Balefsky, Esquire<br>Cheryl P. Jacobs, Esquire | 1500 Walnut Street<br>20th Floor<br>Philadelphia, PA 19102 |

| PHONE NUMBER | SUPREME COURT IDENTIFICATION NO |
|---|---|
| (215) 893-3402 | 64913 |

SIGNATURE                                DATE

For official use only

STATUS
[ ]1001 Default

TRIAL LIST
[ ]1010 Arbitration
[X]1011 Jury
[ ]1012 Non-Jury
[ ]1013 Agency/Tax Appeals
[ ]1014 Mass Tort
[ ]1015 Other

NEXT COURT ACTION
[ ]1101 Arbitration Hearing
Date:
Time:
Arbitration Center
1501 Chestnut Street
20th Floor
Philadelphia, PA 19103

[ ]1102 Settlement Conference
[ ]1103 Hearing/Trial
[ ]1104 Status Conference
[ ]1105 Other
Date:
Time:
Place:

FILING FEE

01-101

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet
*(Supplemental Parties)*

| | |
|---|---|
| | For Prothonotary Use Only (Docket Number) |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | Wyeth-Ayerst Pharmaceuticals, Inc. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 555 East Lancaster Avenue<br>St. David's, PA 19087 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | Wyeth-Ayerst Laboratories, a division of<br>American Home Products Corportion |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 555 E. Lancaster Avenue<br>St. David's PA 19087 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | American Cyanamid Company<br>c/o Peter R. Webster |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | One Portland Square<br>Portland, Maine 04101 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | Interneuron Pharmaceuticals, Inc. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | c/o 1 Ledgemont Center<br>99 Hayden Avenue<br>Lexington, MA 02173 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | Boehringer Ingelheim Corp. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | c/o CT Corporation System<br>1 Commercial Plaza<br>Hartford, CT 06103 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | Boehringer Ingelheim Pharmaceuticals, Inc. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | c/o CT Corporation System<br>1 Commercial Plaza<br>Hartford, CT 06103 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | Les Laboratoires Servier |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 22 Rue Garnier<br>92200 Neuilly<br>Paris, France |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | Servier Amerique |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | 22 Rue Garnier<br>92200 Neuilly<br>Paris, France |

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet
## *(Supplemental Parties)*

For Prothonotary Use Only (Docket Number)

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | Eon Labs Manufacturing, Inc. |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** c/o David Gransee<br>227-15 North Conduit Avenue<br>Laurelton, NY 11413 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME**<br>Fisons Corporation |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS**<br>775 Jefferson Road<br>Rochester, NY 14623 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** Gate Pharmaceuticals, a division<br>of Teva Pharmaceuticals, USA, Inc. |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS**<br>650 Cathill Road<br>Sellersville, PA 18960 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME**<br>Geneva Pharmaceuticals, Inc. |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS**<br>3655 West Midway Boulevard<br>P.O. Box 446<br>Broomfield, CO 80038-0446 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME**<br>Goldline Laboratories, Inc. |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS**<br>1900 West Commercial Boulevard<br>Fort Lauderdale, FL 33309 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME**<br>Ion Laboratories, Inc. |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS**<br>7431 Pebble Drive<br>Fort Worth, TX 76118 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME**<br>Jones Medical Industries, Inc. f/k/a<br>Abana Pharmaceuticals, Inc. |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** c/o Mary Ann L. Wymore, Esquire<br>Greensfield Hemker & Gayle, P.C.<br>2000 Equitable Bldg. 10 South Broadway<br>St. Louis, MO 63102-1774 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME**<br>Medeva Pharmaceuticals, Inc. |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS**<br>14801 Sovereign Road<br>St. Worth, TX 76155-2645 |

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet
## *(Supplemental Parties)*

| For Prothonotary Use Only (Docket Number) |
|---|
| |

| | |
|---|---|
| PLAINTIFF'S NAME | DEFENDANT'S NAME<br>Rexar Pharmacal Corp. division of<br>Richwood Pharmaceutical Company, Inc. |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS<br>7900 Tanners Gate Drive, Suite 200<br>Florence, KY 41042 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME<br>Rosemont Pharmaceuticals, Inc. |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS<br>301 Cherokee Street<br>Denver, CO 80223 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME<br>Rugby Laboratories, Inc. |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS<br>c/o The Corporation Trust Company<br>820 Bear Tavern Road<br>Trenton, NJ 08628 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME<br>Seatrace Pharmaceuticals, Inc. |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS<br>503 Hickman Street<br>Rainbow, City, AL 35906 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME<br>Shire Richwood Company, Inc.<br>Kathleen F. Stewart |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS<br>7900 Tanners Gate Drive, Suite 2000<br>Florence, KY 41042 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME<br>Smithkline Beecham Corporation<br>Loren G. Cooper, Esquire |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS<br>One Fraklin Plaza<br>Philadelphia, PA 19101 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME<br>United Research Laboratories Inc. |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS<br>1100 Orthodox Street<br>Philadelphia, PA 19124 |
| PLAINTIFF'S NAME | DEFENDANT'S NAME<br>Upjohn Company, a/k/a Pharmacia & Upjohn Co. |
| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS<br>7000 Portage Road<br>Kalamazoo, MI 49001 |

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet
*(Supplemental Parties)*

For Prothonotary Use Only (Docket Number)

| | |
|---|---|
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME**<br>Zenith Goldline Pharmaceuticals, Inc. |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS**<br>1900 West Commerican Boulevard<br>Fort Lauderdale, Fl 33309 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME**<br>Jenny Craig Weight Loss Centres, Inc.<br>f/k/a Jenny Craig, Inc. |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS**<br>c/o CT Corporation<br>1635 Market Street<br>Philadelphia, PA 19103 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME**<br>NSI Acquistion, Inc. |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS**<br>410 Horsham Road<br>Horsham, PA 19044 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME**<br>Nutri-System, LP |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS**<br>410 Horsham Road<br>Horsham, PA 19044 |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |
| **PLAINTIFF'S NAME** | **DEFENDANT'S NAME** |
| **PLAINTIFF'S ADDRESS** | **DEFENDANT'S ADDRESS** |

IN THE COURT OF COMMON PLEAS
FOR PHILADELPHIA COUNTY, CIVIL DIVISION

| | | |
|---|---|---|
| IN RE: "PHEN-FEN" LITIGATION | : | May Term, 1999 |
| IN PHILADELPHIA COURT OF | : | No. 0001 |
| COMMON PLEAS | : | |

### NOTICE TO PLEAD

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance, personally, or by an attorney, and filing in writing with the Court your defense objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you, and a judgment may be entered against you by the Court without further notice for any money claims in the Complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

Le han demandado a usted en la corte. Si desea defenderse contra las quejas presentadas es absolutamente necesario que usted responda dentro de 20 dias despues de ser servidco con esta demanda y aviso. Para defenderse, es necesario que used, o su abogado, registre con la corte en forma escrita, el punto de vista de usted y cualquier objeccion contra las quejas en esta demanda. Recuerde: Si usted no reponde a esta demanda, se puede proseguir con el proceso sin su participacion. Entonces, la corte puede, sin notificarlo, decidir a favor del demandante y requerira que usted cumpla con todas las provisiones de esta demanda. Por razon de esa decision, es posible que usted pueda perder dinero, propiedad o estros derechos importantes.

YOU SHOULD TAKE THIS PAPER TO A LAWYER AT ONCE. IF YOU DO NOT KNOW A LAWYER, CALL THE LAWYER REFERENCE SERVICE, 566-6625

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO CONOCE A UN ABOGAGO LLAME AL "LAWYER REFERENCE SERVICE" SERVIDIO DE REFERENCIA DE ABOGADOS 566-6625

IN THE COURT OF COMMON PLEAS
FOR PHILADELPHIA COUNTY, CIVIL DIVISION

| | | |
|---|---|---|
| IN RE: "PHEN-FEN" LITIGATION | : | May Term, 1999 |
| IN PHILADELPHIA COURT OF | : | No. 0001 |
| COMMON PLEAS | : | |

## PLAINTIFFS' GENERAL MASTER LONG-FORM COMPLAINT
### AND JURY DEMAND

Pursuant to an Order by the Honorable Joseph D. O'Keefe, the undersigned attorneys for

plaintiffs in "phen-fen" actions bring this Master General Long-Form Complaint against the

following defendants:

AMERICAN HOME PRODUCTS CORPORATION
Five Giralda Farms
Madison, NJ 07940

WYETH-AYERST PHARMACEUTICALS INC.
555 East Lancaster Avenue
St. David's, PA 19087

WYETH-AYERST INTERNATIONAL INC.
c/o The Prentice-Hall Corp. System, Inc.
319 Market Street
Harrisburg, PA 17101

WYETH-AYERST LABORATORIES, a
division of AMERICAN HOME PRODUCTS CORPORATION
555 E. Lancaster Avenue
St. David's, PA 19087

AMERICAN CYANAMID COMPANY
c/o Peter B. Webster
One Portland Square
Portland, Maine 04101

INTERNEURON PHARACEUTICALS, INC.
c/o 1 Ledgemont Center
99 Hayden Avenue
Lexington, MA 02173

BOEHRINGER INGELHEIM CORP.
c/o CT Corporation System
1 Commercial Plaza
Hartford, CT 06103

BOEHRINGER INGELHEIM PHARMACEUTICALS INC.
c/o CT Corporation System
1 Commercial Plaza
Harford, CT 06103

LES LABORATOIRES SERVIER
22 Rue Garnier
92200 Neuilly
Paris, France

SERVIER AMÉRIQUE
22 Rue Garnier
92200 Neuilly
Paris, France

EON LABS MANUFACTURING, INC.
c/o David Gransee
227-15 North Conduit Avenue
Laurelton, NY 11413

FISONS CORPORATION
775 Jefferson Road
Rochester, NY 14623

GATE PHARMACEUTICALS, a division
of TEVA PHARMACEUTICALS, USA, INC.
650 Cathill Road
Sellersville, PA 18960

GENEVA PHARMACEUTICALS, INC.
2655 West Midway Boulevard
P.O. Box 446
Broomfield, CO 80038-0446

GOLDLINE LABORATORIES, INC.
1900 West Commercial Boulevard
Fort Lauderdale, FL 33309

ION LABORATORIES, INC.
7431 Pebble Drive
Fort Worth, TX 76118

JONES MEDICAL INDUSTRIES, INC. f/k/a
ABANA PHARMACEUTICALS, INC.
c/o Mary Ann L. Wymore, Esquire
Greensfield Hemker & Gayle, P.C.
2000 Equitable Building
10 South Broadway
St. Louis, MO 63102-1774

2

MEDEVA PHARMACEUTICALS, INC.
14801 Sovereign Road
Ft. Worth, TX 76155-2645

REXAR PHARMACAL CORP., a division of
RICHWOOD PHARMACEUTICAL COMPANY, INC.
7900 Tanners Gate Drive, Suite 200
Florence, KY 41042

ROSEMONT PHARMACEUTICALS, INC.
301 Cherokee Street
Denver, CO 80223

RUGBY LABORATORIES, INC.
c/o The Corporation Trust Company
820 Bear Tavern Road
Trenton, NJ 08628

SEATRACE PHARMACEUTICALS, INC.
503 Hickman Street
Rainbow City, AL 35906

SHIRE RICHWOOD COMPANY, INC.
Kathleen F. Stewart
7900 Tanners Gate Drive, Suite 2000
Florence, KY 41042

SMITHKLINE BEECHAM CORPORATION
Loren G. Cooper, Esquire
One Franklin Plaza
Philadelphia, PA 19101

UNITED RESEARCH LABORATORIES INC.
1100 Orthodox Street
Philadelphia, PA 19124

UPJOHN COMPANY
a/k/a Pharmacia & Upjohn Company
7000 Portage Road
Kalamazoo, MI 49001

ZENITH GOLDLINE PHARMACEUTICALS, INC.
1900 West Commercial Boulevard
Fort Lauderdale, FL 33309

JENNY CRAIG WEIGHT LOSS CENTRES, INC. f/k/a
JENNY CRAIG, INC.
c/o CT Corporation
1635 Market Street

3

Philadelphia, PA 19103

NSI ACQUISITION, INC.
410 Horsham Road
Horsham, PA 19044

NUTRI-SYSTEM, LP
410 Horsham Road
Horsham, PA 19044

Defendants.

## PLAINTIFFS

1.      Pursuant to the Order of this Court, this complaint is a Master Complaint filed for
all plaintiffs represented by any plaintiffs' counsel who has signed agreement to the Master
Long Form Complaint and, by operation of such order, all allegations pleaded herein are deemed
pleaded in any "Short-Form" Complaint hereafter filed.

## PHARMACEUTICAL DEFENDANTS
## (FENFLURAMINE/DEXFENFLURAMINE DEFENDANTS)

2.      Defendant **AMERICAN HOME PRODUCTS CORPORATION** (hereinafter
"AHPC"and/or "pharmaceutical defendant") is a Delaware corporation whose principal place of
business is in the state of New Jersey.  AHPC is in the business of, *inter* alia, formulating,
developing, manufacturing, marketing, distributing, and selling, for profit, pharmaceutical
products, or drugs, throughout the United States, including in and for the Commonwealth of
Pennsylvania.  Beginning with Pondimin in the 1960's and Redux in 1996, AHPC, through itself
and/or through AHPC's subsidiaries, has formulated, developed, manufactured, marketed,
distributed and/or sold these two weight loss and diet control drugs to several million consumers
in the United States, including in and for the Commonwealth of Pennsylvania, including
Philadelphia County.

4

2a.    On August 3, 1998, A.H. Robins Company, Inc. (hereinafter "Robins" and/or "pharmaceutical defendant"), a Delaware corporation whose principle place of business is in Virginia, and a subsidiary of AHPC, was merged into AHPC and ceased to exist as a separate entity.  Accordingly, AHPC assumed liability for all actions relevant hereto undertaken by Robins.  Pondimin has been manufactured, marketed, distributed and sold by Robins to several million consumers in the United States, including in and for the Commonwealth of Pennsylvania, including Philadelphia County.

3.    Defendant **WYETH-AYERST PHARMACEUTICALS INC.** (hereinafter "WAPI"and/or "pharmaceutical defendant") is a New York corporation whose principal place of business is in Pennsylvania, and is a subsidiary of AHPC.  On January 1, 1999, Wyeth Laboratories Inc. (hereinafter "Wyeth"and/or "pharmaceutical defendant"),  a subsidiary of AHPC with its principal place of business in Pennsylvania, and its incorporation in the State of New York, was merged into Ayerst Laboratories Inc.  The surviving company was Ayerst Laboratories Inc., the name of which was changed to WAPI.  As its parent, AHPC assumes liability for actions relevant hereto for both Wyeth and WAPI.  At all times relevant, Wyeth was in the business of promoting, marketing, distributing, manufacturing and/or selling the pharmaceuticals fenfluramine and/or dexfenfluramine.  At all times relevant hereto, Wyeth developed, manufactured, promoted, marketed, distributed and/or sold the aforementioned drugs through interstate commerce and in the Commonwealth of Pennsylvania , including Philadelphia County.

4.    Defendant **WYETH-AYERST INTERNATIONAL INC.** (hereinafter "WAII" and/or "pharmaceutical defendant") is a New York corporation whose principal place of business is in the State of New York, and is a subsidiary of AHPC.  On information and belief, WAII

5

participated with co-defendants Les Laboratoires Servier, Servier Amérique, AHPC, Interneuron

Pharmaceuticals, Inc., Wyeth, American Cyanamid Company and Robins in the marketing and

sale to consumers of Pondimin and Redux, for profit, in and for the United States, including in

and for the Commonwealth of Pennsylvania, including Philadelphia County.

     5.    Defendant **WYETH-AYERST LABORATORIES DIVISION OF**

**AMERICAN HOME PRODUCTS CORPORATION** (hereinafter "WALD"and/or

"pharmaceutical defendant") is, on information and belief, a Delaware corporation whose

principal place of business is in New Jersey.  WALD is in the business of, *inter alia,* formulating,

developing, manufacturing, marketing, distributing, and selling, for profit, pharmaceutical

products, or drugs, throughout the United States, including in and for the Commonwealth of

Pennsylvania.  At all relevant times, WALD formulated, developed, manufactured, marketed,

distributed and sold Pondimin and/or Redux to several million consumers in the United States,

including in and for the Commonwealth of Pennsylvania, including Philadelphia County.

     6.    Defendant **AMERICAN CYANAMID COMPANY** (hereinafter "Cyanamid"

and/or "pharmaceutical defendant") is a Maine corporation, and a subsidiary of AHPC, with its

principle place of business in New Jersey.  Prior to being acquired by AHPC in 1994, Cyanamid

held a license for dexfenfluramine, and was involved in the testing and clinical studies of

dexfenfluramine which led to its FDA approval.  At all times relevant to this action, Cyanamid

was engaged in the business of licensing, testing, manufacturing, promoting, marketing,

distributing and/or selling the drug dexfenfluramine.  Upon information and belief, Cyanamid, as

the representative agent and licensee of Interneuron Pharmaceuticals, Inc., began testing,

marketing, distributing and/or selling dexfenfluramine in 1992.

     7.    Defendant **INTERNEURON PHARMACEUTICALS, INC.** (hereinafter

"Interneuron"and/or "pharmaceutical defendant") is a Delaware corporation whose principal place of business is in Massachusetts. Interneuron is in the business of, *inter alia*, formulating, developing, manufacturing, marketing, distributing and selling, for profit, pharmaceutical products, or drugs, throughout the United States, including in and for the Commonwealth of Pennsylvania, including Philadelphia County. Beginning with Redux in 1996, Interneuron formulated, developed, manufactured, marketed, distributed and/or sold, through AHPC as Interneuron's agent, representative, and/or sublicensee, has caused to be formulated, developed, manufactured, marketed, distributed and sold, Redux to several million consumers in the United States, including in and for the Commonwealth of Pennsylvania, including Philadelphia County.

8. Defendant **BOEHRINGER INGELHEIM CORP.** is a Nevada corporation whose principal place of business is in Connecticut. At all times relevant hereto, Boehringer Ingelheim Corp. through its subsidiary, Boehringer Ingelheim Pharmaceuticals, Inc., manufactured, marketed, distributed and sold Redux, to several million consumers in the United States, including in and for the Commonwealth of Pennsylvania, including Philadelphia County.

9. Defendant **BOEHRINGER INGELHEIM PHARMACEUTICALS, INC.** (hereinafter "Boehringer Ingelheim"and/or "pharmaceutical defendant") is a Delaware corporation whose principal place of business is in Connecticut, and is a subsidiary of Boehringer Ingelheim Corp. Redux has been manufactured, marketed, distributed and sold by Boehringer Ingelheim to several million consumers in the United States, including in and for the Commonwealth of Pennsylvania, including Philadelphia County.

10. Defendant **LES LABORATOIRES SERVIER** ("LLS" and/or "pharmaceutical defendant") is a corporation organized and existing under the laws of the Republic of France, with its principal place of business in France. Servier is in the business of formulating,

7

developing, manufacturing, promoting, marketing, licensing, distributing and/or selling, for profit, pharmaceutical products, or drugs, throughout the world, including in the United States, including the Commonwealth of Pennsylvania, including Philadelphia County.  In 1996, LLS's annual world-wide sales were $1.3 billion of which sales 12% took place in North America. Servier's drug products relevant to this matter include fenfluramine and dexfenfluramine.

10a.    Among LLS's drug products are fenfluramine hydrochloride, known by its brand name in the United States as Pondimin; and dexfenfluramine hydrochloride, known by its brand name in the United States as Redux.  Beginning with Pondimin in the 1960s and Redux in the mid 1980's, LLS has produced, marketed, sold, and/or caused to be marketed and sold, these two products to approximately 70 million consumers in 85 countries as weight-loss and diet control drugs

11.    Defendant **SERVIER AMÉRIQUE** (hereinafter "SA"and/or "pharmaceutical defendant") is a corporation organized and existing under the laws of the Republic of France, with its principal place of business in France.  Upon information and belief, SA began promoting LLS' products in America including in and for the United States, including in and for the Commonwealth of Pennsylvania, including Philadelphia County.

### PHARMACEUTICAL DEFENDANTS
### (PHENTERMINE DEFENDANTS)

12.    Defendant **EON LABS MANUFACTURING, INC.** (hereinafter "Eon" and/or "pharmcaeutical defendant") is a Delaware corporation with its principal place of business in New York.  At all times relevant hereto, Eon was engaged in the business of manufacturing promoting, marketing and/or selling the pharmaceutical phentermine.  Upon information and belief, said entity does business in Pennsylvania and at all times relevant hereto developed,

8

marketed, promoted, manufactured and/or sold phentermine in interstate commerce and in the Commonwealth of Pennsylvania, including Philadelphia County.

13.     Defendant, **FISONS CORPORATION** (hereinafter "Fisons" and/or "pharmaceutical defendant") is a Delaware corporation with its principal place of business in New York.  At all times relevant hereto, Fisons manufactured, marketed, promoted, distributed and/or sold the pharmaceutical phentermine in interstate commerce and in the Commonwealth of Pennsylvania, including Philadelphia County.

14.     Defendant **GATE PHARMACEUTICALS** a division of TEVA PHARMACEUTICALS, USA, INC. (hereinafter "Gate" and/or "pharmaceutical defendant") is a Delaware corporation whose principal place of business is in Pennsylvania.  At all times relevant hereto, Gate was engaged in the business of manufacturing, promoting, marketing and/or selling the pharmaceutical phentermine.  Upon information and belief, said entity does business in Pennsylvania and at all times relevant hereto developed, marketed, promoted, manufactured and/or sold phentermine in interstate commerce and in the Commonwealth of Pennsylvania, including Philadelphia County.

15.     Defendant **GENEVA PHARMACEUTICAL, INC.** (hereinafter "Geneva" and/or "pharmaceutical defendant") is a Colorado corporation with its principal place of business in Colorado.   At all times relevant hereto, Geneva was engaged in the business of manufacturing, promoting, marketing and/or selling the pharmaceutical phentermine.  Upon information and belief, said entity does business in Pennsylvania and at all times relevant hereto developed, marketed, promoted, manufactured and/or sold phentermine in interstate commerce and in the Commonwealth of Pennsylvania, including Philadelphia County.

16.     Defendant **GOLDLINE LABORATORIES, INC.** (hereinafter "Goldline"

9

and/or "pharmaceutical defendant") is a Florida corporation with its principal place of business in

Florida. At all times relevant hereto, Goldline was engaged in the business of manufacturing,

promoting, marketing and/or selling the pharmaceutical phentermine. Upon information and

belief, said entity does business in Pennsylvania and at all times relevant hereto developed,

marketed, promoted, manufactured and/or sold phentermine in interstate commerce and in the

Commonwealth of Pennsylvania, including Philadelphia County.

      17.    Defendant **ION LABORATORIES, INC.** (hereinafter "Ion" and/or

"pharmaceutical defendant") is a Texas corporation with its principal place of business in Texas.

At all times relevant hereto, Ion was engaged in the business of manufacturing, promoting,

marketing and/or selling the pharmaceutical phentermine. Upon information and belief, said

entity does business in Pennsylvania and at all times relevant hereto developed, marketed,

promoted, manufactured and/or sold phentermine in interstate commerce and in the

Commonwealth of Pennsylvania, including Philadelphia County.

      18.    Defendant, **JONES MEDICAL INDUSTRIES, INC.** f/k/a ABANA

PHARMACEUTICALS, INC. (hereinafter "Abana" and/or "pharmaceutical  defendant") is a

Delaware corporation with its principal place of business Alabama. At all times relevant hereto,

Abana was engaged in the business of manufacturing, marketing, promoting, distributing, and/or

selling the pharmaceutical phentermine. Upon information and belief, said entity does business

in Pennsylvania and at all times relevant hereto developed, marketed, manufactured and/or sold

phentermine in interstate commerce and in the Commonwealth of Pennsylvania, including

Philadelphia County.

      19.    Defendant **MEDEVA PHARMACEUTICALS, INC.** (hereinafter "Medeva"

and/or "pharmaceutical defendant") is a Texas corporation whose principal place of business is in

10

Texas. At all times relevant hereto, Medeva was engaged in the business of manufacturing, promoting, marketing, distributing and/or selling the pharmaceutical phentermine. At all times relevant hereto, Medeva developed, marketed, manufactured, promoted and/or sold its products through interstate commerce and in the Commonwealth of Pennsylvania, including Philadelphia County.

20. Defendant **REXAR PHARMACAL CORP.** (hereinafter "Rexar" and/or "pharmaceutical defendant"), a division of RICHWOOD PHARMACEUTICAL COMPANY, INC., is a Kentucky corporation with its principal place of business in Kentucky. At all times relevant hereto, Rexar was engaged in the business of manufacturing, promoting, marketing and/or selling the pharmaceutical phentermine. Upon information and belief, said entity does business in Pennsylvania and at all times relevant hereto developed, marketed, promoted, manufactured and/or sold phentermine in interstate commerce and in the Commonwealth of Pennsylvania, including Philadelphia County.

21. Defendant **ROSEMONT PHARMACEUTICALS** (hereinafter " Rosemont" and/or "pharmaceutical defendant"), a wholly owned subsidiary of Rosemont BV, Netherlands, is a Delaware corporation with its principal place of business in Colorado. At all times relevant hereto, Rosemont was engaged in the business of manufacturing, promoting, marketing and/or selling the pharmaceutical phentermine. Upon information and belief, said entity does business in Pennsylvania and at all times relevant hereto developed, marketed, promoted, manufactured and/or sold phentermine in interstate commerce and in the Commonwealth of Pennsylvania, including Philadelphia County.

22. Defendant **RUGBY LABORATORIES, INC.** (hereinafter " Rugby" and/or "pharmaceutical defendant") is a New York corporation with its principal place of business in

11

Georgia.  At all times relevant hereto, Rugby was engaged in the business of promoting, marketing, distributing, manufacturing and/or selling the pharmaceutical phentermine.  Upon information and belief, said entity does business in Pennsylvania and at all times relevant hereto developed, manufactured, marketed and/or sold phentermine in interstate commerce and in the Commonwealth of Pennsylvania, including Philadelphia County.

23.     Defendant **SEATRACE PHARMACEUTICALS, INC.** (hereinafter "Seatrace" and/or "pharmaceutical defendant") is an Alabama corporation with its principal place of business in Alabama.  At all times relevant hereto, Seatrace was engaged in the business of promoting, marketing, distributing, manufacturing and/or selling the pharmaceutical phentermine.  Upon information and belief, said entity does business in Pennsylvania and at all times relevant hereto developed, manufactured, marketed and/or sold phentermine in interstate commerce and in the Commonwealth of Pennsylvania, including Philadelphia County.

24.     Defendant, **SHIRE RICHWOOD, INC.** (hereinafter "Ion" and/or "pharmaceutical defendant") is a Kentucky corporation whose principal place of business is in Kentucky.  At all times relevant hereto, Ion was engaged in the business of manufacturing, marketing, promoting, and/or selling the pharmaceutical phentermine.  Upon information and belief, said entity does business in Pennsylvania and at all times relevant hereto developed, manufactured, marketed and/or sold phentermine in interstate commerce and in the Commonwealth of Pennsylvania, including Philadelphia County.

25.     Defendant **SMITHKLINE BEECHAM CORPORATION** (hereinafter "SmithKline" and/or "pharmaceutical defendant") is a Pennsylvania corporation with its principal place of business in Pennsylvania.  At all times relevant hereto, SmithKline was engaged in the business of manufacturing, promoting, distributing and/or selling the

12

pharmaceutical phentermine. Upon information and belief said entity does business in Pennsylvania and at all times relevant hereto developed, manufactured, marketed and/or sold phentermine in interstate commerce and in the Commonwealth of Pennsylvania, including Philadelphia County.

26.     Defendant **UNITED RESEARCH LABORATORIES INC.** (hereinafter "United" and/or "pharmaceutical defendant") is a Pennsylvania corporation with its principal place of business in Pennsylvania. At all times relevant hereto, United was engaged in the business of manufacturing, promoting, distributing and/or selling the pharmaceutical phentermine. Upon information and belief said entity does business in Pennsylvania and at all times relevant hereto developed, manufactured, marketed and/or sold phentermine in interstate commerce and in the Commonwealth of Pennsylvania, including Philadelphia County.

27.     Defendant **UPJOHN COMPANY** (hereinafter " Upjohn" and/or "pharmaceutical defendant") is a Michigan corporation with its principal place of business in Michgan. At all times relevant hereto, Upjohn was engaged in the business of manufacturing, promoting, distributing and/or selling the pharmaceutical phentermine. Upon information and belief said entity does business in Pennsylvania and at all times relevant hereto developed, manufactured, marketed and/or sold phentermine in interstate commerce and in the Commonwealth of Pennsylvania, including Philadelphia County.

28.     Defendant **ZENITH GOLDLINE PHARMACEUTICALS, INC.** (hereinafter " Zenith" and/or "pharmaceutical defendant") is a Florida corporation with its principal place of business in Florida. At all times relevant hereto, Zenith was engaged in the business of manufacturing, promoting, distributing and/or selling the pharmaceutical phentermine. Upon information and belief said entity does business in Pennsylvania and at all times relevant hereto

13

developed, manufactured, marketed and/or sold phentermine in interstate commerce and in the Commonwealth of Pennsylvania, including Philadelphia County.

## DIET CENTER DEFENDANTS

29.     Defendant **JENNY CRAIG WEIGHT LOSS CENTRES, INC. f/k/a JENNY CRAIG, INC.** (hereinafter "Jenny Craig" and/or "diet defendant") is a Delaware corporation qualified to do business in Pennsylvania. Upon information and belief, Jenny Craig owns and operates weight loss centers throughout the Commonwealth of Pennsylvania. Upon information and belief said entity does business in Pennsylvania and at all times relevant hereto promoted, marketed, and /or sold fenfluramine, dexfenfluramine and phentermine at their weight loss centers in various states and in the Commonwealth of Pennsylvania, including Philadelphia County.

30.     Defendant **NSI ACQUISITION, INC.** (hereinafter "NSI" and/or "diet defendant") is the general partner of Nutri-System, LP and is believed to be incorporated in the State of Delaware with its registered office in Pennsylvania. Upon information and belief, said entity does business in Pennsylvania and at all times relevant hereto marketed, promoted and/or sold fenfluramine, dexfenfluramine and phentermine in interstate commerce and in the Commonwealth of Pennsylvania, including Philadelphia County.

31.     Defendant **NUTRI-SYSTEM, LP** (hereinafter "Nutri-System" and/or "diet defendant") is a limited partnership with its principal place of business in Pennsylvania, and existing under and pursuant to the laws of the State of Delaware. Upon information and belief, defendant Nutri-System owns and operates weight loss centers throughout the Commonwealth of Pennsylvania. Upon information and belief, said entity does business in Pennsylvania and at all

14

times relevant hereto promoted, marketed and/or sold fenfluramine, dexfenfluramine and phentermine at their weight loss centers in various states through interstate commerce in the Commonwealth of Pennsylvania, including Philadelphia County.

## HEALTH CARE DEFENDANTS

32.     Physician defendants (hereinafter "healthcare defendants") are unnamed healthcare providers including, but not limited to, physicians who at all times relevant hereto provided fenfluramine, dexfenfluramine and/or phentermine to patients and/or consumers.

33.     Clinic defendants (hereinafter "healthcare defendants") are unnamed diet clinics who at all times relevant herein either promoted the use of, distributed or otherwise supplied and/or prescribed fenfluramine, dexfenfluramine and/or phentermine.

## GENERAL ALLEGATIONS

34.     Beginning on or about July of 1992, fenfluramine and phentermine began to be widely prescribed and ingested in a combination popularly known, advertised, promoted and referred to as "fen-phen."   These drugs have been commonly prescribed in combination with each other (and/or with dexfenfluramine) as promoters of weight loss.

35.     On information and belief, pharmaceutical defendants have encouraged and promoted the combination use of the drugs that are the subject of this suit because pharmaceutical defendants believed that the combination use, when prescribed by physicians, although not approved by the U.S. Food and Drug Administration ("FDA"), would increase sales of each individual drug.

36.     The "phen" portion consists of phentermine, an amphetamine that purportedly

15

helps the body burn calories faster and counteracts the drowsiness caused by the "fen" portion of the dosage, which consists of fenfluramine, a drug that effects the serotonin levels in the brain. Despite the fact that the concomitant use of fenfluramine and phentermine was never approved by the FDA, these drugs have been widely prescribed for use in combination with each other and/or with dexfenfluramine in conjunction with or in place of fenfluramine, as promoters of weight loss. On information and belief, pharmaceutical defendants otherwise were in control of the formulation, development, design, testing, creation, manufacture, marketing, labeling, packaging, distribution, supplying, advertising, warning about, and sales of fenfluramine, dexfenfluramine and/or phentermine.

37.    Pharmaceutical defendants made filing(s) with the FDA in conjunction with the approval process for fenfluramine, dexfenfluramine and/or phentermine in the United States.

38.    Pharmaceutical defendants' strategy, beginning in the early 1990's, has been to market and sell these products aggressively by falsely and deceptively misleading potential users about the products; by failing to protect users from serious dangers that pharmaceutical defendants knew, or should have known, would result from use of these products; and by creating a misinformed or under-informed community of prescribing care givers in an attempt to create a buffer from responsibility between pharmaceutical defendants and those who would actually be using phentermine, fenfluramine and/or dexfenfluramine.

39.    Regardless, phentermine, fenfluramine and/or dexfenfluramine have been aggressively marketed often by encouraging unapproved off-label combination use of the products.

40.    Pharmaceutical defendants widely and successfully marketed fenfluramine, dexfenfluramine and/or phentermine in the United States, including Pennsylvania.

16

Pharmaceutical, diet center and healthcare defendants widely advertised these products, extolling the virtues of fenfluramine, dexfenfluramine and/or phentermine in order to induce widespread use of these products. Pharmaceutical defendants' marketing campaign consisted of advertisements, promotional literature to be placed in the offices of doctors and other healthcare providers, and other promotional materials to be provided to potential fenfluramine, dexfenfluramine and phentermine users.

41.     In particular, in the material disseminated by pharmaceutical defendants, pharmaceutical defendants falsely and deceptively misrepresented or omitted a number of material facts regarding fenfluramine, dexfenfluramine, and/or phentermine including, but not limited to, the following:

> (a)     The presence and adequacy of testing of fenfluramine and/or dexfenfluramine and/or phentermine, individually or in combination;
>
> (b)     The severity and frequency of adverse health effects caused by fenfluramine and/or dexfenfluramine and/or phentermine, individually or in combination; and
>
> (c)     The temporary nature of the weight loss.

42.     As a direct result of pharmaceutical defendants' conduct, as set forth in the preceding paragraphs, pharmaceutical defendants' products were so pervasively prescribed throughout the United States that in excess of 18 million prescriptions for fenfluramine and dexfenfluramine were written in the United States in 1996. On information and belief, at least tens of thousands of prescriptions for fenfluramine and dexfenfluramine were written in Pennsylvania alone.

17

43.     On information and belief, total aggregated sales of phentermine, fenfluramine, and dexfenfluramine in the U.S. amounted to $360 million in 1996.

44.     In order to compete with private physicians and maintain their share of the weight loss market, weight loss centers including, but not limited to, Nutri-System and Jenny Craig began advertising and offering the fen-phen duo as part of their weight loss programs.

45.     On or about September 15, 1997, the FDA requested that the fenfluramine/dexfenfluramine defendants withdraw fenfluramine and dexfenfluramine from the market, which fenfluramine/dexfenfluramine defendants did, because independent medical center data from the Mayo Clinic in Rochester, Minnesota, and elsewhere indicated that the drugs were associated with heart valve defects in as many as one-third of the patients who took these drugs alone or in combination with phentermine ("the initial Mayo study"). Of 291 patients tested, one-third of them had damaged aortic or mitral heart valves.

46.     Notwithstanding the fact that pharmaceutical defendants received detailed reports during separate meetings with investigators from the Mayo Clinic and the MeritCare Medical Center in Fargo, North Dakota, regarding these findings as early as March of 1997 - four months before an article reporting these findings was published in the *New England Journal of Medicine* - pharmaceutical defendants did nothing to halt the widespread use of fenfluramine, dexfenfluramine and/or phentermine until September of 1997, after the FDA requested they withdraw the drugs, fenfluramine and dexfenfluramine, from the market.

47.     On or about July 8, 1997, the Mayo Clinic in Rochester, Minnesota released an emergency report linking the use of fenfluramine and phentermine to unusual, potentially life-threatening diseases.

48.     On November 11, 1997, results of a study funded by the National Institute of

18

Health ("NIH"), of the association between heart valve abnormalities and the use of fenfluramine and/or dexfenfluramine, individually or in combination with phentermine, were reported at the annual conference of the North America Association for the Study of Obesity in Cancun, Mexico. The study, conducted by investigators at the Hennepin County Medical Center in Minneapolis, Minnesota ("the Hennepin study"), found significant heart valve leaks in 24% of 226 individuals taking one or more of these drugs.

49.    Notably, the Hennepin study included a control or comparison group of 81 people matched by age, sex, height, and weight to the 226 cases. The 226 cases took fenfluramine and/or dexfenfluramine, while the 81 controls did not. Only 1% of the controls had significant heart valve leaks.

50.    All 307 individuals in the Hennepin study (cases and controls) had echocardiograms, which were read by physicians who were "blind" as to the status of each individual, i.e., the reading physicians had no knowledge as to whether the person had taken the diet drugs or not.

51.    The Hennepin study investigators found that dexfenfluramine ("Redux") is as likely to lead to heart valve defects as fenfluramine. Of the 226 patients observed in the Hennepin study, 145 had taken the combination of fenfluramine and phentermine, 40 had taken dexfenfluramine, 27 had taken dexfenfluramine in combination with phentermine, and 14 had taken all three drugs.

52.    Pharmaceutical defendants knew or should have known that fenfluramine and/or dexfenfluramine, when used alone or in combination with phentermine, created significant risks of serious injuries or disorders, including damage to heart valves, primary pulmonary hypertension (PPH), related cardiopulmonary dysfunction, and neurotoxicological injury, as to

19

which pharmaceutical defendants failed to make proper, reasonable or adequate warning to the public about the risks associated with the use of their products.

53.     The FDA's recent announcements were by no means pharmaceutical defendants' first hint at problems with these drugs. On August 26, 1996, the lead article in *The New England Journal of Medicine* reported the results of the International Primary Pulmonary Hypertension study ("IPPH Study"), "Appetite Suppressants and the Risk of Primary Pulmonary Hypertension." The IPPH study concluded that fenfluramine-based anorexigens, such as fen-phen, increased the risk of PPH by a multiple of more than 30.

54.     Pharmaceutical defendants were aware of the results of the IPPH study in advance of its official publication in *The New England Journal of Medicine* in August, 1996.

55.     Nevertheless, pharmaceutical defendants failed to appraise their consumers, the public, or the medical community that the risk of contracting PPH was significantly greater than that previously reported by pharmaceutical defendants in their literature.

56.     Pharmaceutical defendants have also failed to warn the public and the medical community about the special risks of developing PPH, heart valve defects, or other serious problems associated with the use of fenfluramine and/or dexfenfluramine, individually or in combination with phentermine.

57.     The product warnings in effect during the time that fenfluramine and/or dexfenfluramine were prescribed were non-existent or inadequate as to the need to alert prescribing physicians and consumer patients of the actual adverse health risks associated with these drugs, which risks were then known (or should have been known) to the pharmaceutical defendants.

58.     Long before their knowledge of the IPPH study results, however, pharmaceutical

20

defendants knew about PPH and other dangers associated with anorexigens, based upon reliable adverse reports relating to European experience with such drugs, including but not limited to Aminorex, involving serious injuries and fatalities, dating back to the 1970's.

59.     Between 1994 and 1996, while dexfenfluramine was under FDA consideration, at least 30 cases of heart valve problems were identified among diet-pill users examined by physicians in Belgium.  This information was reported to Belgian drug regulators and the French diet drug manufacturer LLS.

60.     Pharmaceutical defendants did not adequately or appropriately disclose related drug information to physicians in the United States.  As a result, physicians have been over-prescribing fenfluramine and dexfenfluramine, individually and/or in combination with phentermine, to patients who have been under-informed regarding the risks associated with these drugs.

61.     The FDA had never approved fenfluramine and/or dexfenfluramine for combination use with phentermine.  The pharmaceutical defendants knew of, encouraged, and/or profited from the prevalence of off-label combination use of these drugs, and failed adequately and appropriately to warn physicians and consumers that the combination drug regimen was not FDA approved, was especially hazardous, was not recommended, and had not been systematically tested by appropriate clinical trials.

62.     As a result of using fenfluramine and/or dexfenfluramine, either individually or in combination with phentermine, Plaintiffs have been exposed to a hazardous and dangerous substance or substances, causing the injuries more fully described hereinafter.

## COUNT I - NEGLIGENCE
## PLAINTIFFS vs. PHARMACEUTICAL DEFENDANTS

21

63.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows:

64.    Pharmaceutical defendants had a duty to exercise reasonable care to properly design, research, develop, test, inspect, label and prepare for use the aforesaid drug(s) and the component raw materials in the manufacture, sale and/or distribution of phentermine, fenfluramine and/or dexfenfluramine which were introduced into the stream of commerce, including a duty to insure that the products not cause users to suffer from unreasonable, dangerous or untoward adverse side effects.

65.    Pharmaceutical defendants failed to exercise ordinary care in the design, research, development, manufacture, sale, testing, quality assurance, quality control and/or distribution of phentermine, fenfluramine and/or dexfenfluramine into interstate commerce, in that pharmaceutical defendants knew or should have known that the products phentermine, fenfluramine and/or dexfenfluramine, individually and/or in combination, created the risk of unreasonable, dangerous or untoward adverse side effects.

66.    Pharmaceutical defendants knew, or in the exercise of reasonable care, should have known, that the aforesaid products and their constituent elements were of such a nature that if not properly manufactured, labeled, tested, and inspected before sold, they were likely to cause injury to the products' user.

67.    Pharmaceutical defendants were negligent in the design, manufacture, testing, promotion, advertising, warning, labeling, marketing and sale of phentermine, fenfluramine and/or dexfenfluramine, in that they:

(a)    Failed to use due care in the designing, testing, and manufacturing of phentermine, fenfluramine and/or dexfenfluramine so as to prevent the aforementioned risks to

22

individuals when phentermine, fenfluramine and/or dexfenfluramine were being used for weight loss;

      (b)     Failed to accompany their product with proper warnings regarding all possible adverse side effects associated with the use of phentermine, fenfluramine and/or dexfenfluramine and the comparative severity and duration of such adverse effects;

      (c)     Failed to conduct adequate pre-clinical testing and post-marketing surveillance to determine the safety of phentermine, fenfluramine and/or dexfenfluramine;

      (d)     Failed to provide adequate training and information to medical care providers for the appropriate use of phentermine, fenfluramine and/or dexfenfluramine either individually or in combination;

      (e)     Failed to warn Plaintiffs, prior to actively encouraging and promoting the sale of phentermine, fenfluramine, dexfenfluramine and/or any combination of these drugs, either directly or indirectly, orally or in writing, about the following: (1) the need for comprehensive, regular medical monitoring to insure early discovery of potentially fatal pulmonary, cardiac and neurological side effects; (2) the possibility of becoming disabled as a result of the drug use; (3) the adverse side effects associated with the use of these drugs including, but not limited to, cardiac abnormalities, primary pulmonary hypertension and/or neurological impairment which may become protracted, debilitating, difficult and painful, necessitating lengthy surgery and/or doctor, clinic or hospital visits;

      (f)     Failed to adequately test and/or warn about the reaction or interaction of one or more of the component parts in phentermine, fenfluramine and/or dexfenfluramine, including but not limited to, the possible adverse side effects caused by the reaction or interaction between the drugs as a result of the combination use;

(g)     Failed to warn that brain serotonin levels are affected by the drug use which can cause other serious health risks and/or neurotoxicity;

(h)     Failed to warn that the costs associated with phentermine, fenfluramine and/or dexfenfluramine could exceed other comparable forms of weight loss, particularly for those who were not clinically obese;

(i)     Failed to effectively warn about the increased danger and unapproved status of the combination use of these drugs; and

(j)     Were otherwise careless and/or negligent.

68.     Despite the fact that the pharmaceutical defendants knew or should have known that phentermine, fenfluramine, dexfenfluramine and/or any combination thereof caused unreasonable and dangerous side effects which many users would be unable to remedy by any means, pharmaceutical defendants continued to promote and market phentermine, fenfluramine, dexfenfluramine and the combination use thereof to consumers including Plaintiffs, when safer alternative methods of weight loss were available.

69.     Pharmaceutical defendants knew or should have known that consumers such as Plaintiffs would foreseeably suffer injury as a result of pharmaceutical defendants' failure to exercise ordinary care as described above.

## COUNT II - STRICT LIABILITY IN TORT
### PLAINTIFFS vs. PHARMACEUTICAL DEFENDANTS

70.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows:

71..     Pharmaceutical defendants are manufactures and/or suppliers of phentermine, fenfluramine and/or dexfenfluramine and are strictly liable to Plaintiffs for designing, creating,

24

manufacturing, marketing, labeling, distributing, selling and placing into the stream of commerce the products, phentermine, fenfluramine and dexfenfluramine.

72.     The phentermine, fenfluramine and/or dexfenfluramine manufactured and/or supplied by pharmaceutical defendants was defective in design or formulation, in that, when it left the hands of the manufacturer and/or supplier, it was unreasonably dangerous, it was more dangerous than an ordinary consumer would expect and more dangerous than other forms of weight loss.

73.     The phentermine, fenfluramine and/or dexfenfluramine manufactured and/or supplied by pharmaceutical defendants was defective in design or formulation in that, when it left the hands of the manufacturer and/or supplier, the foreseeable risks exceeded the benefits associated with the design or formulation.

74.     The phentermine, fenfluramine and/or dexfenfluramine manufactured and/or supplied by pharmaceutical defendants was defective due to inadequate warnings or instructions because the manufacturer knew or should have known that the product created, among other things, a risk of pulmonary, cardiovascular or neurological harm to consumers and the pharmaceutical defendants failed to adequately warn of said risks.

75.     The phentermine, fenfluramine and/or dexfenfluramine manufactured and/or supplied by pharmaceutical defendants was defective due to inadequate premarket testing.

76.     The phentermine, fenfluramine and/or dexfenfluramine manufactured and/or supplied by pharmaceutical defendants was defective due to pharmaceutical defendants' failure to provide adequate initial warnings and post-marketing warnings or instructions after the manufacturer knew or should have known of the risk of pulmonary, cardiovascular or neurological injury from phentermine, fenfluramine, dexfenfluramine and/or combination use of

25

these drugs, and continued to promote the product.

## COUNT III - STRICT LIABILITY - FAILURE TO WARN
## PLAINTIFFS vs. PHARMACEUTICAL DEFENDANTS

77.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows:

78.     The pharmaceutical defendants failed to provide adequate warnings and/or information concerning the harm or potential harm and dangers of said products to persons ingesting the products, including but not limited to the Plaintiffs herein.

79.     The pharmaceutical defendants sold said products to the Plaintiffs without providing information concerning the dangers and harm to persons ingesting the product, including but not limited to the Plaintiffs herein.

80.     The pharmaceutical defendants failed to perform adequate testing which would have established that phentermine, fenfluramine, and dexfenfluramine, when used individually or in combination, possessed potentially serious side effects about which the pharmaceutical defendants should have provided full and proper warnings, with respect to the use of phentermine, fenfluramine and/or dexfenfluramine, individually or in any combination thereof.

81.     The pharmaceutical defendants failed to warn physicians and users of phentermine, fenfluramine and/or dexfenfluramine, of the aforementioned dangers and adverse side effects, and also failed to recommend and promote other safer weight loss methods, particularly for those persons who were not clinically obese.

82.     The phentermine, fenfluramine and/or dexfenfluramine, manufactured and/or supplied by the pharmaceutical defendants was defective due to inadequate post-marketing warnings and/or instructions in that pharmaceutical defendants failed to provide adequate

26

warnings to users and consumers of phentermine, fenfluramine and/or dexfenfluramine and continued to aggressively promote and  market those drugs after they knew or should have known of the risk of harm from those drugs or any combination of said drugs.

83.     The phentermine, fenfluramine and/or dexfenfluramine manufactured and/or supplied by the pharmaceutical defendants was defective in design or formulation because when these drugs left the control of the manufacturer and/or supplier, the foreseeable risks exceeded the benefits to be derived from the use of these drugs.

## COUNT IV - BREACH OF IMPLIED WARRANTY
## PLAINTIFFS vs. PHARMACEUTICAL DEFENDANTS

84.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows:

85.     At all relevant times herein, the pharmaceutical defendants formulated, marketed, manufactured, promoted, packaged, labeled, distributed and/or sold phentermine, fenfluramine and/or dexfenfluramine for use by the public at large and including the Plaintiffs herein. Pharmaceutical defendants knew the use for which the product was intended and implied said warranted products to be of merchantable quality, safe and fit for use.

86.     The Plaintiffs reasonably relied on the skill and judgment of the pharmaceutical defendants, and as such their implied warranties, in using the aforementioned products.  Contrary to the implied warranties, said products were not of merchantable quality or safe or fit for their intended use,  because said products used either individually or in combination, are unreasonably dangerous and unfit for the ordinary purposes for which they were used.

88.     Pharmaceutical defendants breached their implied warranties to Plaintiffs in violation of § §2314 and 2315 of the Pennsylvania Uniform Commercial Code (i) by

27

manufacturing, marketing, packaging, labeling, dispensing and selling said products to Plaintiffs

with the risk of cardiac, pulmonary and neurological injury without warning or disclosure thereof

by package or label of such risks to Plaintiffs, Plaintiffs' physician or pharmacist, and/or without

so modifying or excluding such implied warranties; (ii) by manufacturing, marketing, packaging,

labeling, and selling to Plaintiffs products described above which failed to control Plaintiffs' diet

and weight loss in a safe manner and without cardiac, pulmonary or neurological injury; and (iii)

by manufacturing, marketing, packaging, labeling, and selling to Plaintiffs phentermine,

fenfluramine and/or dexfenfluramine, which caused serious physical injury and pain and

suffering and attendant economic loss.

## COUNT V - BREACH OF EXPRESS WARRANTY
## PLAINTIFFS vs. PHARMACEUTICAL  DEFENDANTS

89.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if

fully set forth here and further allege as follows:

90.     Pharmaceutical defendants, through description, affirmation of fact and promise

relating to their diet group products to the FDA, prescribing physicians and the general public,

including the Plaintiffs herein, expressly warranted that their products were both efficacious and

safe for their intended use.

91.     These warranties came in the form of: (i) publicly-made written and verbal

assurances of safety and efficacy by pharmaceutical defendants pursuant to and following FDA

approval, including but not limited to statements of clinical data that purported to report the

incidence of adverse experiences with fenfluramine and/or dexfenfluramine, but which in fact

grossly understated such incidence; (ii) press releases, interviews and dissemination via the

media of promotional information the sole purpose of which was to create demand for

28

pharmaceutical defendants' diet drugs, but which failed utterly to warn of the risks inherent to ingestion of pharmaceutical defendants' diet drugs or the indications thereof; (iii) verbal assurances made by pharmaceutical defendants' diet drugs, and the downplaying of any indicia of risk associated with such diet drugs; (iv) false and misleading written information, supplied by pharmaceutical defendants, and published in the Physicians Desk Reference on an annual basis, upon which physicians were forced to rely in prescribing pharmaceutical defendants' drugs, during the years of Plaintiffs' ingestion of phentermine, fenfluramine and/or dexfenfluramine including, but not limited to information relating to dosage and duration of use of the drugs; (v) promotional pamphlets and brochures published and distributed by pharmaceutical defendants and directed to consumers; and (vi) advertisements. See relevant portions of the Physicians' Desk Reference attached hereto and marked as Exhibit "A" and advertisements attached hereto and marked as Exhibit "B".

92.     At the time of these express warranties, pharmaceutical defendants had knowledge of the purpose for which the aforesaid drug(s) was to be used and warranted same to be in all aspects safe, effective and proper for such purpose.

93.     Pharmaceutical defendants' diet drugs do not conform to these express representations in that they are neither safe nor effective for long-term weight management, and they do produce serious side effects, including life threatening cardiovascular, pulmonary and/or neurological injury.

94.     As such, pharmaceutical defendants' diet drug products were neither in conformity to the promises, descriptions or affirmations of fact made of these drugs by the pharmaceutical defendants, nor adequately contained, packaged, labeled or fit for the ordinary purposes for which such goods are used.

29

95.     Pharmaceutical defendants thereafter breached their express warranties to Plaintiffs in violation of §§2313 and 2318 of the Pennsylvania Uniform Commercial Code: (i) by manufacturing, marketing, packaging, labeling, and selling phentermine, fenfluramine and/or dexfenfluramine to Plaintiffs in such a way that misstated the risk of heart valve damage, pulmonary hypertension and/or neurological injury, without warning or disclosure thereof by package and label of such risks to Plaintiffs or the prescribing physician or pharmacist, and/or without so modifying or excluding such express warranties; (ii) by manufacturing, marketing, packaging, labeling, and selling to Plaintiffs, phentermine, fenfluramine and/or dexfenfluramine, which failed to control Plaintiffs' diet and weight loss in a safe and permanent manner and without heart valve damage and/or pulmonary hypertension and/or neurological injury; and (iii) by manufacturing, marketing, packaging, labeling, and selling to Plaintiffs, phentermine, fenfluramine and/or dexfenfluramine causing Plaintiffs serious physical injury and pain and suffering.

## COUNT VI - FRAUD
## PLAINTIFFS vs. PHARMACEUTICAL DEFENDANTS

96.     Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows:

97.     Pharmaceutical defendants, having undertaken the manufacturing, marketing, dispensing, distribution and promotion of the diet drugs described herein, owed a duty to provide accurate and complete information regarding these products.

98.     Pharmaceutical defendants' advertising program, by affirmative misrepresentations and omissions, falsely and deceptively sought to create the image and impression that the use of fenfluramine and/or dexfenfluramine and/or phentermine, individually

30

and/or in combination, was safe for human use; had no, or no unacceptable, side effects; had fewer side effects than other methods of weight loss; constituted a convenient, safe form of weight loss; would result in permanent weight loss; and would not interfere with daily life.

99.     On information and belief, pharmaceutical defendants purposefully concealed, failed to disclose, misstated, downplayed, and understated the health hazards and risks associated with the use of fenfluramine and/or dexfenflurmine and/or phentermine, individually or in combination. Pharmaceutical defendants through promotional literature, deceived potential users and prescribers of said diet drugs by relaying only allegedly positive information, including testimonials from allegedly satisfied users, and manipulating statistics to suggest widespread acceptability, while concealing, misstating, and downplaying the known adverse and serious health effects. Pharmaceutical defendants falsely and deceptively kept relevant information from potential fenfluramine, dexfenfluramine and phentermine users and minimized prescriber concerns regarding the safety and efficacy of fenfluramine and/or dexfenfluramine and/or phentermine, individually or in combination.

100.     In particular, in the materials disseminated by pharmaceutical defendants, pharmaceutical defendants falsely and deceptively misrepresented or omitted a number of material facts regarding the previously stated substances including, but not limited to, the following:

> (a)     The presence and adequacy of testing of fenfluramine and/or dexfenfluramine and/or phentermine, individually or in combination;
>
> (b)     The severity and frequency of adverse health effects caused by fenfluramine and/or dexfenfluramine and/or

31

phentermine, individually or in combination; and

(c)    The temporary nature of the weight loss.

## COUNT VII - MEDICAL MALPRACTICE
## PLAINTIFFS vs. DIET AND HEALTHCARE DEFENDANTS

101.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows:

102.    At all times relevant hereinafter mentioned, each unnamed provider was either a duly licensed and practicing physician, an authorized diet clinic and/or a weight loss center in the Commonwealth of Pennsylvania specializing in the practice of medicine and/or weight reduction.

103.    At all times hereinafter mentioned, such defendants were persons, doctors, nurses, nurses aides, weight loss centers, corporations, or clinics, and/or other healthcare providers or their employees, agents, servants, or hospital employees or staff members, or hospitals themselves, or other corporate or non-incorporated entities, or professional associations or associates whose responsibility and/or identity are presently unnamed but whose identities will be specified in the "Plaintiffs' Short Form Complaint" and who were involved in the examination, testing, diagnosis and treatment rendered to Plaintiffs and through whose negligence Plaintiffs were injured, or who were responsible for and/or whose combined actions or omissions contributed to the injuries of the Plaintiffs.

104.    Diet and healthcare defendants had an obligation to evaluate, examine, monitor, treat and attend to Plaintiffs in connection with the administration and continuing use of diet medication as noted above.

105.    At various times, diet and healthcare defendants undertook the duty of exercising reasonable care in the examination, testing, diagnosis and treatment of said Plaintiffs, in

32

accordance with reasonable and accepted standards of the various medical practices.

106.    Diet and healthcare defendants breached their duties in that they negligently and carelessly failed to evaluate, attend to, examine, test, diagnose, monitor and treat said Plaintiffs in accordance with accepted standards of medical practice.  To the extent that diet and healthcare defendants conducted any evaluation, examination, monitoring, treating and testing, their performance was not reasonable and not in accordance with standards of medical practice.

107.    Diet and healthcare defendants deviated and departed from the acceptable medical practice within their area of specialty.

## COUNT VIII - FAILURE TO OBTAIN INFORMED CONSENT
## PLAINTIFFS vs. DIET AND HEALTHCARE DEFENDANTS

108.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows:

109.    The informed consent provision of the Pennsylvania Healthcare Services Malpractice Act, 40 P.S. § 1301.811A, provides in pertinent part:

"(a) Except in emergencies, a physician owes a duty to a patient to obtain the informed consent of the patient or the patient's authorized representative prior to conducting the following procedures:

.....

(5) Administering an experimental medication, using an experimental device or using an approved medication or device in an experimental manner."

40 P.S. §1301.811A.

110.    While dexfenfluramine, fenfluramine, and phentermine are approved medications,

the off label prescription of a combination of these drugs constitute the use of approved medications in an experimental manner.

111.    Diet and healthcare defendants therefore owed Plaintiffs a duty to obtain informed consent prior to prescribing the combination of fenfluramine and/or dexfenfluramine and/or phentermine, by describing the risks and alternatives associated with the prescription of such experimental medications.

112.    The provision of such information would have been a substantial factor in Plaintiffs' decision whether or not to take the combination fenflluramine and/or dexfenfluramine and/or phentermine, had Plaintiffs been provided with it.

113.    Diet and healthcare defendants failed to obtain Plaintiffs' informed consent prior to prescribing fenfluramine and/or dexfenfluramine and/or phentermine, individually or in combination, for Plaintiffs.  In so doing, the diet and healthcare defendants deviated and departed from the acceptable standard of medical practice within their respective area(s) of specialty.

114.    Said informed consent could only be obtained if the patient was adequately informed of the risks associated with the drugs and treatment and was provided an individualized assessment of the consequences of the administration of the treatment and/or drugs.

115.    Diet and healthcare defendants deviated and departed from the acceptable medical practice within their respective area(s) of specialty.

## COUNT IX - WRONGFUL DEATH

116.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows:

34

117.    As a direct and proximate result of the aforesaid, some of the Plaintiffs who ingested the defendants' diet drugs specified above, (hereafter referred to as "decedents"), were caused to contract the diseases and injuries described herein, causing extreme pain, suffering and mental anguish, and died as a direct and proximate result of defendants' negligence, breach of implied and express warranties, strict liability, failure to warn, fraud, medical malpractice and failure to obtain informed consent as alleged herein.

## COUNT X - LOSS OF CONSORTIUM
### PLAINTIFFS vs. ALL DEFENDANTS

118.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows:

119.    Plaintiffs' spouse was at all times relevant herein, the husband/wife of Plaintiff and as such, lives and cohabits with her/him.

120.    By reason of the foregoing, Plaintiffs' spouse has necessarily paid and has become liable to pay for medical aid, treatment, and for medications, and will necessarily incur further expenses of a similar nature in the future.

121.    By reason of the foregoing, Plaintiff's spouse has been caused, presently and in the future, the loss of his/her wife/husband's companionship, services, society, and the ability of said Plaintiff's wife/husband in said respects has been impaired and depreciated, and the marital association between husband and wife has been altered, and as such the Plaintiffs, have been caused great mental anguish.

122.    At all times relevant herein pharmaceutical, diet and healthcare defendants:

(a)     knew that drugs were dangerous and ineffective;

35

(b)     concealed the dangers and health risks from Plaintiffs, physicians,

pharmacists, other medical providers, the FDA and the public at

large;

(c)     made misrepresentations to Plaintiffs, their physicians, pharmacists,

hospitals and medical providers and the public in general as previously

delineated herein as to the safety and efficacy of the drugs; and

(d)     with full knowledge of the health risks associated with the aforementioned

products and without adequate warnings of the same, manufactured,

marketed, promoted, developed, sold, prescribed and/or distributed

drugs for routine use.

## COUNT XI - DAMAGES

123.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if

fully set forth here and further allege as follows:

124.    As a direct and proximate result of the negligence, strict liability, strict liability-

failure to warn, implied warranty, breach of express and implied warranties, fraud, medical

malpractice, failure to obtain informed consent of the defendants as described in Counts I-VIII

supra, Plaintiffs were caused to contract diseases and injuries to Plaintiffs' cardiac, pulmonary

and/or neurological system(s), and/or other parts of the body, the full extent of which has not yet

been determined, including valvular regurgitation, valvular thickening, valve repair surgery,

valve replacement surgery, pulmonary hypertension, primary pulmonary hypertension and

neurological defects, some or all of which are permanent and/or fatal, as set forth in each

Plaintiff's "Short-Form" Complaint to be filed, and may suffer in the future from other diseases

36

which have not yet been diagnosed, causing Plaintiffs pain, suffering and mental anguish.

125.    As a direct and proximate result of the aforesaid, Plaintiffs were obliged to spend various sums of money to treat their diseases and injuries and Plaintiffs continue to be obliged for the expenses of same; as a direct and proximate result of the aforesaid, Plaintiffs have sustained a loss of earnings and earning capacity; and as a direct and proximate result of the aforesaid, Plaintiffs' enjoyment of life has been impaired and Plaintiffs' life expectancies shortened, all to Plaintiffs' great loss.

126.    As a direct and proximate result of the aforesaid, Plaintiffs have undergone great physical pain, mental anguish, and shock to their nervous system.

127.    As a direct and proximate result of the aforesaid, and since Plaintiffs first learned of their injuries, Plaintiffs have developed severe anxiety, hysteria or phobias, any or all of which have developed into a reasonable and traumatic fear of an increased risk of additional injury and/or progression of the existing condition(s).

128.    As a direct and proximate result of the aforesaid, Plaintiffs have and will continue to suffer permanent and ongoing psychological damage which may require future psychological and/or medical treatment.

129.    As a direct and proximate result of the aforesaid, Plaintiffs have and will continue to suffer a disintegration and deterioration of the family unit and the relationships existing therein, resulting in enhanced anguish, depression and other symptoms of psychological stress and disorder.

130.    As a direct and proximate result of the aforesaid, decedents incurred hospital, nursing and medical expenses.  Decedents' beneficiaries have incurred hospital, nursing, medical, funeral and estate administration expenses as a result of decedents' deaths.  Plaintiffs as

37

Executors/Executrixes of the Estates of decedents bring this claim on behalf of decedents' lawful beneficiaries for these damages and for all pecuniary losses sustained by said beneficiaries pursuant to 42 Pa. C.S.A. 8301.

131.    As a direct and proximate result of the aforesaid, decedents, prior to their deaths, were obliged to spend various sums of money to treat their injuries, which debts have been assumed by their estates; as a direct and proximate result of the aforesaid, decedents were caused pain, suffering, mental anguish and impairment of the enjoyment of life, until the date of their deaths; and, as a direct and proximate result of the aforesaid, decedents suffered a loss of earnings and earning capacity. Plaintiffs, as Executors/Executrixes of decedents' estates bring this claim on behalf of the estates for damages under 42 Pa. C.S.A. 8302.

132.    As a direct and proximate result of the aforesaid, decedents and their spouses, until the time of decedents' deaths, suffered a disintegation and deterioration of the family unit and the relationships existing therein, resulting in enhanced anguish, depression and other symptoms of psychological stress and disorder. This claim is brought on behalf of the estates of decedents, pursuant to 42 Pa. C.S.A. 8302, and on behalf of plaintiff-spouses in their own right.

133.    As a direct and proximate result of the aforesaid, and including the observance of the suffering of their spouses, decedents, until the dates of their deaths, suffered permanent and ongoing psychological damage; as a direct and proximate result of the aforesaid, and including the observance of the suffering and physical deterioration of their spouses, until the dates of their deaths, Plaintiffs have and will continue to suffer permanent and ongoing psychological damage which may require future psychological and/or medical treatment. Plaintiffs as Executors/Executrixes or Adminstrators/Administratrixes of decedents' estates bring the claim on behalf of the estates for damages under 42 Pa. C.S.A. 8302, and in their own right.

38

## PUNITIVE DAMAGES

134.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully set forth here and further allege as follows:

135.    The Plaintiffs are entitled to punitive damages because the pharmaceutical defendants' failure to warn was reckless and without regard for the public's safety and welfare. The pharmaceutical defendants misled both the medical community and public at large, including the Plaintiffs herein, by making false representations about the safety of their products, used either individually or in combination. The pharmaceutical defendants downplayed, understated and/or disregarded their knowledge of the serious and permanent side effects associated with the use of their products despite available information demonstrating these products were likely to cause serious and sometimes fatal side effects to the users.

136.    The pharmaceutical defendants were or should have been in possession of evidence demonstrating that their products caused serious side effects and were not effective for permanent weight loss. Nevertheless, they continued to market the products by providing false and misleading information with regard to safety and efficacy.

137.    Pharmaceutical, diet and healthcare defendants' actions described  above were performed willfully, intentionally and with reckless disregard for the rights of Plaintiffs and the public.

138.    Accordingly, Plaintiffs seek and are entitled to punitive or exemplary damages in an amount to be determined at trial.

## RELIEF

**WHEREFORE,** Plaintiffs pray for relief as follows:

(1)     Compensatory damages in an amount in excess of $50,000.00 as provided by law and to be supported by the evidence at trial;

(2)     An award of attorneys' fees, pre-judgement and post-judgement interest, and cost of suit, as provided by law;

(3)     Such other legal and equitable relief as this Court deems just and proper.

**GREITZER & LOCKS**

BY: _____

LEE B. BALEFSKY, ESQUIRE
Identification No. 25321
1500 Walnut Street - 20th Floor
Philadelphia, PA 19102
(215) 893-0100

**SALTZ, MONGELUZZI &
BARRETT, LTD.**

BY: _____

MICHAEL F. BARRET, ESQUIRE
Identification No. 42305
One Liberty Place
1650 Market Street - 34th Floor
Philadelphia, PA 19103
(215) 496-8282

40

PETER G. ANGELOS LAW
OFFICE

BY: _____

DENNIS GRUENKE, ESQUIRE
Identification No. 61465
Wanamaker Bldg.
100 Penn Square East
Suite 1050
Philadelphia, PA 19107
(215) 963-9333


MONHEIT, MONHEIT,
SILVERMAN & FODERA, PC

BY: _____

LEONARD V. FODERA, ESQUIRE
Identification No. 57230
2010 Chestnut Street
Philadelphia, PA 19103-4487
(215) 561-2100


MCELDREW & FULLAM, PC

BY: _____

JAMES J. MCELDREW, ESQUIRE
Identification No. 26411
One Liberty Place
Suite 5050
Philadelphia, PA 19103
(215) 563-8300

43

LAW OFFICES OF SCOTT
MARSHALL POLLACK

BY: _____

SCOTT M. POLLACK, ESQUIRE
Identification No. 36046
Noble, Plaza Suite 313
801 Jenkintown, PA 19046
(215) 572-7469

**KOLSBY, GORDON, ROBIN &
SHORE**

BY: _____

PHILIP F. ROBIN, ESQUIRE
Identification No. 20062
One Liberty Place - 22nd Floor
Philadelphia, PA 19103
(215) 851-9700

**PHILIP H. RUSH LAW OFFICES**

BY: _____

PHILIP H. RUSH, ESQUIRE
Identification No. 21079
1845 Walnut Street
Suite 1600
Philadelphia, PA 19103
(215) 567-4700

44

## **VERIFICATION**

I, KAREN M. LODIGIANI, ESQUIRE, hereby verify that I am Liaison Counsel on Behalf of Defendant Health Care Providers in this matter; that the facts contained in the foregoing Master Preliminary Objections are true and correct to the best of my knowledge, information and belief; and further that this statement is made subject to the penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities.

_Karen M. Lodigiani, Esquire_

DATE: _July 1, 1999_

Doc#: 223133 v1

# EXHIBIT C

IN RE:

PHEN-FEN LITIGATION

:    COURT OF COMMON PLEAS
:    PHILADELPHIA COUNTY
:
:    MAY TERM, 1999
:    NO. 0001

## CASE MANAGEMENT ORDER NO. 1
## FOR "PHEN-FEN" PERSONAL INJURY CASES

It is the goal of this Court to secure the just, speedy and inexpensive determination of

each "Phen-fen" individual, as opposed to class action, personal injury case now pending or

hereafter filed in the Court of Common Pleas, Philadelphia County, Pennsylvania and to

eliminate duplication of effort, prevent unnecessary paperwork and promote judicial economy.

In order to achieve these objectives, the following Case Management Order No. 1 is

entered this ___7___ day of _____, 1999 for all individual personal injury "Phen-

fen" cases which are presently pending or hereafter filed in the Philadelphia Court of Common

Pleas.

## I.   MASTER "PHEN-FEN" DOCKET

The Court has established a Master "Phen-fen" Docket at May Term, 1999, No. 0001.

This docket number has been established as a depository for the filing of pleadings, motions,

orders and other documents common to individual "Phen-fen" personal injury cases.  Once a

pleading, motion, order or other document is filed in this docket and copies are produced to all

other interested counsel involved in the "Phen-fen" litigation, the pleading, motion and order or

other document may be incorporated by reference either orally before the court or within another

properly filed pleading, motion, order or other document.

## II    PLEADINGS

### A.    MASTER LONG FORM COMPLAINT

1.    On May 17, 1999, pursuant to direction from the Court, plaintiffs filed a Master Long Form Complaint ("Master Complaint").

2.    Within forty-five (45) days of that date or by July 1, 1999, defendants shall file either (a) an Answer or (b) Master Set of Preliminary Objections to the Master Complaint, with supporting memorandum of law.

3.    Plaintiffs shall then have thirty (30) days or until August 2, 1999 to respond to defendants preliminary objections.

4.    The Court will rule after hearing oral argument on the preliminary objections and that ruling will be binding for all current and future personal injury individual "Phen-fen" cases filed in Philadelphia County.

5.    If preliminary objections are granted to one or more counts in the Master Complaint, plaintiffs, if so ordered, shall file a conforming amended Master Complaint within twenty (20) days of the Order granting the preliminary objections.

6.    In the event that an Amended Master Complaint is filed, defendants shall have thirty (30) days from the filing of the Amended Master Complaint to file a responsive pleading; or, if no Amended Master Complaint need be filed, defendants shall have thirty (30) days from the Order denying preliminary objections to file a Master Answer.

7.    If New Matter is pled, such New Matter will be deemed denied and plaintiffs are not required to file any further responsive pleadings to defendants new matter.

2

B.   PREVIOUSLY FILED CASES

1.      The Master Complaint filed on May 17, 1999 will substitute and supersede complaints filed in individual "Phen-fen" cases pending in the Philadelphia Court of Common Pleas before May 17, 1999 ("previously filed cases").

2.      Within thirty (30) days of the filing of defendants' master answer, plaintiffs shall file an Amended Short Form Complaint substantially in the form attached as Exhibit A for previously filed cases in Philadelphia County using the original court term and number for such filed cases.

3.      In the Amended Short Form Complaint, plaintiffs may allege additional counts not pled in the Master Complaint.

4.      Defendants shall have thirty (30) days from the date of service of the Amended Short Form Complaint to file preliminary objections to the Amended Short Form Complaint, with supporting memorandum of law.

5.      Defendants will not file preliminary objections challenging claims as to which preliminary objections have previously been denied.

6.      Plaintiffs shall then have thirty (30) days to file a response to the preliminary objections.

7.      The judge may thereafter schedule oral argument on the preliminary objections after which he shall issue a ruling.

8.      If the judge's ruling on preliminary objections to the Amended Short Form Complaint does not provide for the filing of an amended Short Form Complaint, the remaining allegations of the amended Short Form Complaint shall be deemed denied and defendants are not required to file answers to the amended Short Form Complaint.  An entry of appearance shall

3

constitute a denial of all allegations in the amended Short Form Complaint and an assertion of all affirmative defenses.

9.      If any of the judge's ruling permits the plaintiffs to file an amended Short Form Complaint, defendants shall be afforded thirty (30) days in which to file a responsive pleading to the amended Short Form Complaint.

10.     If no responsive pleading is filed, allegations in the Amended Short Form Complaint will be deemed denied and defendants are not required to file answers to the amended Short Form Complaint. An entry of appearance shall constitute a denial of all allegations in the amended Short Form Complaint and an assertion of all affirmative defenses.

C.      **NEWLY FILED CASES**

1.      All cases filed after May 17, 1999, shall be instituted by the filing of a Writ of Summons or a Short Form Complaint. If suit is instituted by a Writ of Summons, a Short Form Complaint shall be filed within thirty (30) days.

2.      Plaintiffs shall indicate in the Short Form Complaint those counts of the Master Complaint that they are incorporating by reference.

3.      In the Short Form Complaint, plaintiffs may allege additional counts not pled in the Master Complaint.

4.      Defendants shall have thirty (30) days from the date of service of the Short Form Complaint or thirty (30) days from the date of the Court's ruling on the preliminary objections to the Master Complaint, whichever is later, to file preliminary objections to the Short Form Complaint, with supporting memorandum of law.

5.      Defendants will not file preliminary objections challenging claims as to

4

which preliminary objections to the Master Complaint have previously been denied.

6.      Plaintiffs shall then have thirty (30) days to file a response to the preliminary objections.

7.      The judge may thereafter schedule oral argument on the preliminary objections after which he shall issue a ruling.

8.      If the judge's ruling on preliminary objections to the Short Form Complaint does not provide for the filing of an amended Short Form Complaint, the remaining allegations of the Short Form Complaint shall be deemed denied and defendants are not required to file answers to the Short Form Complaint. An entry of appearance shall constitute a denial of all allegations in the Short Form Complaint and an assertion of all affirmative defenses.

9.      If any of the judge's ruling permits the plaintiffs to file an amended Short Form Complaint, defendants shall be afforded thirty (30) days in which to file a responsive pleading to the amended Short Form Complaint.

10.     If no responsive pleading is filed, allegations in the amended Short Form Complaint will be deemed denied and defendants are not required to file answers to the amended Short Form Complaint. An entry of appearance shall constitute a denial of all allegations in the amended Short Form Complaint and an assertion of all affirmative defenses.

**D.**   <u>CROSS-CLAIMS</u>

1.   Defendants reserve the right to file cross-claims in cases subject to this Case

Management Order until further Order of Court.

**BY THE COURT:**

O'Keefe, J.

Date: 7-7-95

6

|                                                   |   |                                               |
|---------------------------------------------------|---|-----------------------------------------------|
|                                                   | : | COURT OF COMMON PLEAS                          |
|                                                   | : | PHILADELPHIA COUNTY                           |
| Plaintiff,                                        | : |                                               |
|                                                   | : |                                               |
| vs.                                               | : | June Term, 1999                               |
|                                                   | : |                                               |
|                                                   | : | No.                                           |
|                                                   | : |                                               |
| AMERICAN HOME PRODUCTS                             | : | "PHEN-FEN" CASE                               |
| CORPORATION, et al.                               | : |                                               |
|                        Defendants.                | : | JURY TRIAL DEMANDED                           |

## CIVIL ACTION COMPLAINT- SHORT FORM

Plaintiffs incorporate by reference Plaintiffs' Master Long Form Complaint in In Re:

"Phen-Fen" Litigation in Philadelphia County Court of Common Pleas, filed as of May, 17,

1999, under Master Docket Number, May 1999, NO. 0001.  Pursuant to an Order by the

Honorable Joseph D. O'Keefe, the following Short Form Complaint is utilized in this "Phen-

Fen" action.

       i.     This Complaint involves the claims of the following persons:

          a.     Plaintiff

               Name:
               Address:
               Social Security No.:
               Date of Birth:

          b.     Plaintiff's Spouse

               Name:
               Address:

               Social Security No.:

2.    The Defendants are those parties listed in the caption.

3.    Plaintiff hereby incorporates by reference the following Counts from the Master Long Form Complaint: Counts _____.

4.    Plaintiff ingested the following drugs relevant to this action:

Fenfluramine/Dexfenfluramine/Phentermine as follows:

### DURATION OF USE

a.    Fenfluramine          _____

b.    Dexfenfluramine      _____

c.    Phentermine          _____

        Brand Name          _____

5.    The prescribing physician/diet center was _____.

6.    Plaintiff was diagnosed on or about _____ by_____ as having _____( ie. heart valve regurgitation/pulmonary hypertension).

6a.    Plaintiff first learned that his/her injuries described therein were related to the ingestion of diet drugs on or about _____.

7.    Plaintiff's dependents are:

* If specific facts in support of this action are required, all pertinent information will be documented on a separate sheet of paper attached to the Complaint.

2